UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re Ex Parte Application of Pro-Sys Consultants and Neil Godfrey,<br><br>Applicants. | )<br>)<br>)<br>)  Civil Action No. 16-mc-91016<br>)<br>) |

**REPORT AND RECOMMENDATION
ON MICROSOFT CORPORATION & RAYMOND OZZIE'S
MOTIONS TO QUASH AND MICROSOFT'S MOTION TO INTERVENE**

[Dkt. Nos. 15, 18, 19]

June 14, 2016

Boal, M.J.

Raymond E. Ozzie and Microsoft Corporation seek to vacate an order granting a 28 U.S.C. § 1782 ("Section 1782") application and to quash a deposition subpoena issued by Pro-Sys Consultants Ltd. and Neil Godfrey.  Dkt. Nos. 15, 19.  For the following reasons, this Court recommends that the subpoena to Ozzie be quashed.[1]

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   **The Canadian Litigation**

Pro-Sys and Godfrey (the "Applicants") and Microsoft are parties in an action pending in the Supreme Court of British Columbia, Canada.  Dkt. Nos. 16 at 2; 20 at 2; 34 at 1.[2]  The case, *Pro-Sys Consultants and Neil Godfrey v. Microsoft Corporation and Microsoft Canada Co./Microsoft Canada CIE*, BCSC Action No. L043175 (the "Canadian Litigation) began in 2004 and involves allegations that Microsoft engaged in anticompetitive conduct in the

---

[1] On April 20, 2016, the District Court referred this case to the undersigned United States Magistrate Judge.  Dkt. No. 32.

[2] When referring to the parties' pleadings and exhibits, the Court cites to the docket (ECF) page numbers rather than the page numbers in the original documents.

1

marketplace.  Dkt. Nos. 20 at 2; 34 at 3.  The Canadian Litigation is a consumer class action in which the plaintiffs are end users who indirectly acquired a license for Microsoft operating systems and/or Microsoft applications software between December 23, 1998 and March 11, 2010.  Dkt. No. 34 at 3.

On May 29, 2015, upon agreement by the parties, the Supreme Court of British Columbia (the "BC Court") issued a 27-page trial management order ("TMO") governing pre-trial discovery and trial procedures in the Canadian Litigation.  Dkt. No. 21-1.  The TMO indicates that all matters in the order "have been agreed to by the parties."  Id. ¶ 1.  "It is intended that the provisions of [the TMO] shall be comprehensive except where necessary to address matters that are not anticipated by [the TMO] or are not inconsistent with the provisions of [the TMO]."  Id.  The TMO recognizes that, as a result of similar proceedings in the United States and before the European Commission, there has been extensive disclosure of relevant documents and witnesses.  Id. ¶ 2.  Accordingly, the TMO states that the "primary discovery of Parties and witnesses shall be considered as having been accomplished by the conduct of depositions in the Eligible US Proceedings and the disclosure of the written evidence in the [European Commission]."  Id. ¶ 6.  Schedule D of the TMO identifies seventeen prior cases, which the TMO defines as "Eligible US Proceedings," because they involved information and allegations similar to those in the Canadian Litigation.  Id. at 27-28.

The TMO provides the parties to the Canadian Litigation with the reciprocal right to designate testimony from hundreds of depositions taken in the Eligible US Proceedings, but also mandates that the Microsoft defendants produce an appropriate witness for examination on issues of fact relating to, inter alia, allegations concerning events after January 1, 2006 or allegations concerning Microsoft Canada and Microsoft's activities in Canada.  Id. ¶ 7(a).  The TMO is

without prejudice to the plaintiffs' right to apply for a different witness than proposed by the defendants or for additional discovery from a witness or witnesses. Id. ¶ 8. Plaintiffs are also required under the TMO to seek leave of Court before asking "questions during examinations for discovery . . . regarding subject matters addressed in the Eligible US Proceedings." Id. ¶ 10. Finally, the TMO provides for the direct evidence of a witness to be provided only by way of affidavit or by prior testimony from an Eligible U.S. Proceeding. Id. ¶¶ 25, 32; see also Dkt. No. 21-2 at 6.

### B. Raymond E. Ozzie

Ozzie joined Microsoft as its Chief Technology Officer in 2005, and, in 2006, he assumed the role of Chief Software Architect. Dkt. Nos. 16 at 2; 34 at 3. The Applicants allege that Ozzie was a member of Microsoft's Senior Leadership Team and that he attended high-level meetings concerning strategic decisions about Microsoft products and the impact of those decisions on competitors' products. Dkt. No. 34 at 3-4. The Applicants further allege that in those roles, Ozzie authored numerous emails and other documents that have been produced by Microsoft in the Canadian Litigation. Id. at 3. Ozzie retired from Microsoft in late 2010. Dkt. No. 16 at 2.

Raymond Ozzie is not a party to the Canadian Litigation. Dkt. Nos. 16 at 2; 34 at 4. According to the Applicants, he was not deposed in any of the Eligible US Proceedings. Id.

### C. The Applicants' First Section 1782 Application

On January 15, 2016, the Applicants filed in the District of Massachusetts, an ex parte application for an order pursuant to Section 1782. Dkt. No. 1. Specifically, they sought leave to seek discovery from Ozzie. Id. On January 21, 2016, the District Judge denied the application without prejudice. Dkt. No. 4. In support of her opinion, Judge Talwani referenced the TMO

and held that the Applicants had not shown "that they have been granted leave from the Supreme Court of British Columbia or that they are not required to make such application." Id. at 1.

### D. The BC Court's Reasons for Judgment

On January 26, 2016, the Applicants sought clarification from the BC Court as to their right to take foreign depositions. Dkt. No. 20 at 5. Specifically, they asked Justice Myers, who presides over the Canadian Litigation, to declare that they were not required to seek leave in order to file a Section 1782 application in the United States.[3] Dkt. No. 34 at 7. In response, Microsoft brought an application for declaratory relief for an order asserting that:

> (1) the requested U.S. depositions do not constitute pre-trial discovery pursuant to the TMO; (2) any proceeding for a deposition obtained under § 1782 does not constitute an "Eligible US Proceeding" pursuant to the TMO; (3) any transcript of any deposition obtained under § 1782 does not constitute a "deposition transcript" as contemplated by the TMO; and (4) the transcript of any deposition obtained under § 1782, but conducted without leave of the BC Court under the BC Rules, cannot be used at trial.

Dkt. No. 20 at 5-6.

On March 3, 2016, Justice Myers issued a ruling on the parties' applications (the "Reasons for Judgment"). Dkt. No. 21-2. The Reasons for Judgment specifically recognizes that the parties intend to use the BC Court's ruling in support of and/or in opposition to Section 1782 applications filed in the United States. Dkt. No. 21-2 at 4. In acknowledging the purpose of the declarations, Justice Myers distinguished the Reasons for Judgment from prior decisions where he declined to make declarations concerning foreign third-party discovery. Id. Justice Myers also differentiated his March 3, 2016 ruling from prior discovery decisions in the Canadian Litigation as those did not concern discovery of Microsoft or its former personnel. Id. at 5.

---

[3] At the hearing before the BC Court, the plaintiffs dropped their application for a declaration that the BC Court "is receptive to evidence from the Ozzie 1782 deposition, subject to its admissibility which will be determined at trial." Dkt. No. 21-2 at 4.

With respect to the Applicants' request, Justice Meyers found that there was "nothing in our Rules or the TMO requiring leave of this Court for the plaintiffs to apply for the U.S.C. Rule 1782 deposition." Id. at 8.  The real issue was the admissibility of the deposition, meaning that the subject deposition was not contemplated by the TMO. Id.  at 7-8.  Justice Meyers granted Microsoft's requests for declarations one through three.[4]  Id. at 5.  With respect to declaration number four, after noting that the TMO was intended to be comprehensive, Justice Meyers found that "under the Rules," there is a process to obtain evidence from a witness who is outside the jurisdiction of the court and therefore unable to be subpoenaed. Id. at 6-7.  The Applicants had not followed that process. Id. at 7.  Justice Meyers also outlined the discovery methods contemplated by the TMO and stated that "the depositions of the Microsoft former personnel with which this application is concerned are presumed to be inadmissible." Id. at 5-8.  The statement was made "without prejudice to the plaintiffs attempting to establish their admissibility at a later time should the depositions proceed." Id. at 8.

### E.   The Applicants' Second Section 1782 Application

On March 8, 2016, the Applicants moved to reopen the case before Judge Talwani.  Dkt. No. 5.  In support of their application for a Section 1782 subpoena, they attached the Reasons for Judgment as well as other materials relevant to the Canadian Litigation.  Dkt. No. 7-10.  On March 11, 2016, Judge Talwani granted the Applicants' amended application on the following grounds: the BC Court constitutes a foreign tribunal within the meaning of Section 1782; the evidence is sought for use in the Canadian Litigation; Ozzie is a resident of Massachusetts; and

---

[4] In his decision, Justice Meyers noted that the plaintiffs in that case took "no issue with the declarations sought in items (1) and (2)" of Microsoft's application.  Id. at 4.

5

the Applicants did not require leave from the BC Court to make their application and thus, the BC Court "is therefore receptive to the court's assistance here."[5]  Dkt. No. 11.

Accordingly, on April 1, 2016, the Applicants served a deposition subpoena on Ozzie pursuant to Federal Rule of Civil Procedure 45.  Dkt. No. 17 at 4-5.  The notice contains no description of Ozzie's proposed testimony.[6]  Id.

### F.     The Western District Of Washington Cases

In addition to the subpoena served on Ozzie, the Applicants served deposition subpoenas on former Microsoft employees who reside in Washington State.  On March 10, 2016, Microsoft and two non-parties, James Allchin and Steve Ballmer, moved for a protective order and/or to quash the deposition subpoenas that were served on them by the Applicants.  See In re Pro-Sys Consultants and Neil Godfrey, No. 16-00457, Dkt. Nos. 12, 16 (W.D. Wash. 2016); In re Pro-Sys Consultants and Neil Godfrey, No. 16-00459, Dkt. Nos. 11, 17 (W.D. Wash. 2016).  On June 7, 2016, Judge Richard A. Jones of the United States District Court for the Western District of Washington denied the motions.  Dkt. No. 37-1.  In making his determination, Judge Jones found that the BC Court is not unreceptive to the proposed discovery, that the Applicants were not required to request discovery from the BC Court prior to seeking discovery from the district court in the Western District of Washington, and that there is no evidence of bad faith or of circumvention of the BC Court's proof-gathering restrictions by the Applicants.  Id. at 8-11.  Judge Jones also held that the proposed depositions were relevant and did not constitute an

---

[5] Judge Talwani subsequently recused herself from this case, which was then reassigned to Chief Judge Saris.  Dkt. Nos. 25, 29.

[6] In two similar cases described below, the Applicants did provide a description of the proposed testimony of those potential witnesses.  During oral argument in this case, the Applicants' counsel stated that the lack of a description in the Ozzie subpoena was inadvertent.

undue burden on Messrs. Allchin and Ballmer. Id. at 11-14. Accordingly, Judge Jones denied the motions. Id. at 14.

### G. The Subject Motions

On April 14, 2016, Ozzie and Microsoft each moved to vacate the District Court's March 11, 2016 Order and to quash the subpoena directed to non-party Ozzie. Dkt. Nos. 15, 19. Microsoft also filed an assented-to motion to intervene pursuant to Federal Rule of Civil Procedure 24. Dkt. No. 18. On April 28, 2016 the Applicants filed a joint opposition to Microsoft and Ozzie's companion motions. Dkt. No. 34. The Applicants did not file an opposition to Microsoft's motion to intervene. The Court heard oral argument on May 26, 2016. On June 7, 2016, the Applicants filed a notice of supplemental authority consisting of Judge Jones' opinion denying the motions to quash and for a protective order with respect to the non-party depositions of Messrs. Allchin and Ballmer. Dkt. No. 37.

## II. MICROSOFT'S MOTION TO INTERVENE

Microsoft argues that it should be permitted to intervene in the instant action. In support of this argument, Microsoft alleges that the Applicants' Section 1782 application seeks discovery that is improper under the TMO, which governs the Canadian Litigation. Dkt. No. 18 at 1. The Applicants do not oppose the motion.

Federal Rule 24(b)(1)(B) provides that "on timely motion, the court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The First Circuit has held that Rule 24(b)'s "common question of law or fact" requirement imposes a low threshold. Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n, 197 F.3d 560, 568 (1st Cir. 1999). When deciding whether permissive intervention is warranted under Fed. R. Civ. P. 24(b), the district court "can

consider almost any factor rationally relevant" and "enjoys very broad discretion in granting or denying the motion." Daggett v. Comm'n on Gov't Ethics & Election Practices, 172 F.3d 104, 113 (1st Cir. 1999).

Here, there is no dispute as to a common question of law or fact. In addition, Microsoft is the defendant in the Canadian Litigation and the former employer of the proposed deponent. Accordingly, the Court finds that Microsoft has an interest in the proposed deposition of Ozzie and its motion to intervene is granted.

### III.     MOTIONS TO QUASH

####     A.     Legal Standard

A request for discovery under 28 U.S.C. § 1782 presents two inquiries: (1) whether the district court is authorized to grant the request, and (2) if so, whether the district court should exercise its discretion to do so. The statute provides the threshold requirements for the Court's authority. Under Section 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." 28 U.S.C. § 1782(a). If these statutory requirements are met, a court may, but is not required to, grant the application. Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004). In determining whether it should exercise its authority to grant the application, a court must consider the following non exclusive factors: (1) whether the person from whom discovery is sought is a participant in the foreign proceedings, or instead, is a nonparty outside the foreign tribunal's jurisdiction whose evidence is presumably more dependent on the court's assistance; (2) the nature and character of the foreign proceedings, and the receptivity of the foreign body involved to United States judicial assistance; (3) whether the

application attempts to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the requests are unduly intrusive or burdensome. Id. at 264-65.

The district court's discretion is not boundless, and it must exercise such discretion in light of the statute's twin aims: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to American courts. See Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 84 (2nd Cir. 2004). In addition to the discretion accorded to the district courts under Section 1782 to limit the scope of discovery, Rule 26 of the Federal Rules of Civil Procedure also allows the court discretion to limit discovery. In re Apotex Inc., No. 12-160, 2009 WL 618243, at *3 (S.D.N.Y. March 9, 2009).

Rule 26 permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) generally permits liberal discovery of relevant information. Baker v. Liggett Group, Inc., 132 F.R.D. 123, 125 (D. Mass. 1990). As the Supreme Court has instructed, because "discovery itself is designed to help define and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). However, courts must also consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Any discovery taken pursuant to Section 1782 is also governed by Fed. R. Civ. P. 26(b)(2), which authorizes a court to limit discovery if it is: (1) unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside the scope permitted by Fed. R. Civ. P. 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C); see also Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3rd Cir. 1999).

A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1). Miller v. Allstate Fire & Cas. Ins. Co., No. 07-260, 2009 WL 700142, at *2 (W.D. Pa. Mar. 17, 2009) (citation omitted); see e.g. In re Application of Yukos Hydrocarbons Invs. Ltd., No. 09-0078, 2009 WL 5216951, at *4 (N.D.N.Y. Dec. 30, 2009) (applying Rule 45 criteria to consideration of a Section 1782 request). Generally, the party moving to quash a subpoena bears the burden of persuasion. Demers v. LaMontagne, No. 98-10768-REK, 1999 WL 1627978, at *2 (D. Mass. May 5, 1999). Accordingly, Rules 26 and 45 provide protections to the subjects of requests made pursuant to Section 1782.

**B.     Magistrate Judge Authority**

As an initial matter, this Court must consider its authority to rule on the instant motions, which is in turn determined by whether the matters are dispositive. This is important because any non-dispositive matter referred to a magistrate judge may be reconsidered by the district judge "where it can be shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). When a "dispositive" matter, as defined in 28 U.S.C. § 636(b)(1)(A), is referred to a magistrate judge, any resulting decision may be reviewed, after the parties file objections, by the district judge under a de novo standard. 28 U.S.C. § 636(b)(1).

10

Courts disagree over whether a Section 1782 proceeding, or a motion thereunder, is a dispositive motion requiring the magistrate judge to issue a report and recommendation. See In re Clerici, 481 F.3d 1324, 1331 (11th Cir. 2007) (standard of review for discovery ordered under Section 1782 "is identical to that used in reviewing the district court's ordinary discovery rulings"); Qwest Commc'ns Int'l. Inc., No. 08-93, 2008 WL 2741111, at *1-3 (W.D.N.C. July 10, 2008); but see Phillip v. Beierwaltes, 466 F.3d 1217, 1221-2 (10th Cir. 2006) (questioning whether a Section 1782 application for discovery in aid of foreign litigation could be characterized as a non-dispositive matter); Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3068.2 (2014) (Section 1782 proceedings "qualify as dispositive" because "the sole purpose of the proceeding is to obtain discovery," and accordingly, a ruling on a "motion to compel such discovery is a final, dispositive matter.").

Here, the district judge assigned to this case issued an order of reference to the undersigned Magistrate Judge. Dkt. No. 32. Any order issued by this Court may be subject to some form of review depending on whether the parties elect to appeal the decision. This Court is sympathetic to the view that discovery issues are largely within the purview of magistrate judges. However, it also recognizes that some courts have found that where a discovery issue is the sole issue before a court, it is dispositive. Accordingly, as there appears to be conflicting authority, this Court will not resolve the issue, but rather, in an abundance of caution, will issue a report and recommendation.

## IV.   DISCUSSION

### A.   Statutory Requirements

Neither Ozzie nor Microsoft dispute that the Applicants meet the statutory requirements for a Section 1782 application. Dkt. Nos. 16 at 4; 20 at 7. Indeed, Ozzie resides or is found in

this District, the Applicants seek discovery for their use as plaintiffs in the Canadian Litigation, and the BC Court has, however reluctantly, expressed at least some willingness to consider the admissibility of a foreign deposition, such as the one at issue here. Accordingly, this Court agrees with Judge Talwani and finds that the instant application meets the statutory requirements of Section 1782. However, even when all three of the statutory requirements are met, Section 1782 "authorizes, but does not require," a court to grant the application for discovery. Intel, 542 U.S. at 247. A court may still deny the request for discovery on discretionary grounds.

### B. Discretionary Factors

The Supreme Court has explained that "when the person from whom Discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." Id. at 264. This is because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." Id. It is apparent that Ozzie will not be a participant in the BC Court proceedings. He is a former Microsoft employee, and Microsoft's counsel has indicated that they are unable to produce Ozzie as an adverse party witness because they have no control over him. Dkt. No. 34 at 4; Dkt. No. 34-2 at ¶ 23; Dkt. No. 34-4. Accordingly, this factor favors the Applicants.[7]

The Court may also consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign [court] to U.S. federal-court judicial assistance." Intel, 542 U.S. at 264. As Judge Woodlock explained, the receptivity of the foreign court is particularly important in light of the purposes of Section 1782(a). In re Babcock

---

[7] Ozzie and Microsoft do not appear to contest that this factor supports the Applicants' position. See Dkt. No. 29; Dkt. No. 16 at 5 (contesting only that the Applicants fail to satisfy other Intel factors).

Borsig AG, 583 F. Supp. 2d 233, 241 (D. Mass. 2008). A primary purpose of the statute is "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." Intel, 542 U.S. at 262. In a situation where the foreign court restricts discovery, granting the application could undermine the statute's objective. See, e.g., In re Application of Microsoft Corp., No. 06-10061, 2006 WL 1344091, *4 (D. Mass. April 19, 2006). Moreover, if there is "reliable evidence" that the foreign tribunal would not make any use of the requested material, it may be irresponsible for a court to order such discovery. Babcock, 583 F. Supp. 2d at 241. Finally, while there is no exhaustion requirement for seeking discovery under Section 1782, the court may, in its discretion, properly consider a party's failure first to attempt discovery measures in the foreign jurisdiction. Id. at 241.

### C. Analysis

Under the circumstances of this case, I recommend that the District Court exercise its discretion to quash the subpoena. The BC Court has not foreclosed the use of such discovery, but it has indicated that the admissibility of such evidence is unlikely. Dkt. No. 21-1 at 7-8. More importantly, the BC case has been pending for over ten years. See Dkt. No. 1-3. In an effort to bring the lengthy litigation to a close in an efficient and just manner, the parties devised a joint TMO that makes use of the previous decade of discovery collected in US and European cases. To bring discovery from these previous cases current, the TMO allows for Rule 30(b)(6) type depositions of Microsoft personnel. Dkt. No. 21-1 at ¶ 7. It further allows for the Canadian plaintiffs to seek additional discovery from witnesses different from those proposed by Microsoft. Id. at ¶ 8. Microsoft accuses the Applicants of attempting, by virtue of the instant Section 1782 application, to circumvent the comprehensive pre-trial discovery and trial

procedures set forth in the TMO. Dkt. No. 16 at 5; see Intel, ("[A] court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.").[8]

Other than mentioning at oral argument that the Applicants seek to question Ozzie about some particular emails in his file, the Applicants have made no showing as to why they could not obtain such information through the agreed-upon discovery process in Canada. Indeed, they have made no showing as to why others could not be questioned about the emails. Because the parties and the BC judge intended through the TMO to regulate the discovery process, this Court believes that it should exercise at least some restraint before granting the instant application.

Save for the emails, the Applicants have failed to state any specific purpose for Ozzie's deposition beyond a general allegation that it will "assist Applicants in proving their claims against Microsoft with regard to anticompetitive conduct in the relevant software markets." Dkt. No. 34 at 4. There is nothing in the record before this Court to indicate that the BC Court's processes are inadequate to obtain the discovery sought here. Accordingly, Ozzie's deposition appears to run afoul of the carefully constructed discovery plan prepared jointly by the parties and endorsed by the BC court, particularly given the Applicants' ability to obtain relevant evidence from Microsoft's representative witnesses in the Canadian Litigation. Dkt. Nos. 16 at 6; 20 at 11. Put differently, the TMO itself offers, albeit not from the same witness, the possibility of obtaining the same discovery sought here, under the supervision of the BC Court.

---

[8] Judge Jones found that "[a]ny focus on whether the TMO permits the requested discovery (or whether the depositions are admissible) is a red herring." Dkt. No. 37-1 at 5. In doing so, that Court relied on Intel's instruction to United States courts not to engage in comparative analysis to determine whether analogous proceedings exist here. This Court respectfully disagrees. By relying on the TMO, this Court is not comparing the available discovery in the two legal systems. Rather, this Court is focusing on the comprehensive, agreed upon discovery schedule that was negotiated by the parties and approved by the BC Court, and on whether the requested deposition would undermine that agreed-upon plan.

The overlay of the Section 1782 mechanism threatens unfairness and virtually ensures unnecessary complication and expense to an already lengthy proceeding.  These considerations lead the Court, in its discretion, to recommend denial of such discovery in this case.

## V.      RECOMMENDATION

For the foregoing reasons, this Court grants Microsoft's motion to intervene and recommends that Microsoft and Ozzie's motions to quash be granted.

## VI.     REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

                                          /s/ Jennifer C. Boal
                                          JENNIFER C. BOAL
                                          UNITED STATES MAGISTRATE JUDGE